The next case for argument this morning is ARC Welding v. American Welding. Things have quieted down a bit. May it please the Court, my name is Jeff Cobb. The parties in this case entered into an asset purchase agreement that had a particular problem at the very beginning. Neither side knew how many cylinders were owned by my clients, the sellers, and as a result they drafted a remedy into their contract known as the Deferred Cylinder Payment. That remedy stated that within 180 days of the date of the agreement, the defendant, the appellees, would count and verify all of the cylinders. And if they turned out to be less than 6,500, there would be a deduction from a deferred cylinder payment. You know, you contend that American Welding never finished the cylinder count and the verification, but how could there be clear error for the district court to find a shortfall of 1,837 cylinders when American provided evidence of its methodology in the audit and ARC was unable to provide any evidence of cylinders that were not properly counted? Well, Your Honor, we obviously disagree with that finding of the district court. If you look at our Exhibit 5, it's an email from Tammy Coyle, and it's about 10 days before the deadline was to end. Tammy Coyle attaches to it a spreadsheet that shows 3,900 customers of my client. In that email, she states only a little bit over 600 have been audited. Now, the reason we know the count eventually provided to us after the deadline on May 28th is wrong is because in that spreadsheet of Tammy Coyle, who, by the way, the defendants called the Cylinder Nazi, that spreadsheet showed the exact same numbers of cylinders that was then presented to us as a final count on May 28th. In other words, they did not talk to over half of the customers about cylinders, yet they went ahead and said, oh, this is the final count. And we stand here today saying they still have not provided us with what was required under the contract, a count that is verified of the cylinders because they have not changed that figure. The other thing wrong with the district court's finding in that particular respect is we never promised them 6,500 cylinders. If you read the contract, you'll say we promised them all of the cylinders that we have, and it attaches a schedule, and the schedule says approximately 6,500. That was intentional. And if you look at the transcript, even Ron Atkins, the president of the defendant appellees, said we didn't know how many cylinders were, but my client didn't know how many cylinders there were. We had to draft our own provisions to deal with the question of counting and then later adjusting the price from the deferred cylinder pin. But how can approximately 6,500, a plain meaning of that, be about 1,800 short? Well, it's not, Your Honor. Our position is to this day they have not counted all the cylinders. So if the district court got that right, that it was 1,800 short, would you agree that that's not approximately 6,500? Your Honor, it is not 6,500 quarts. No, the math is simple. If it's 1,800 short, it's not 6,500. It's not even approximately 6,500. Ah, Your Honor, again, the issue is the count. I'm saying let's assume the district court got that correct. Yes. And its findings with respect to the count. Would you agree that being 1,800 short, roughly, does not amount to approximately 6,500? Well, and Your Honor, this brings up an issue which in the overall picture is kind of minor. But if you read the contract under deferred cylinder payments, it says that there will be a deduction for the amount below $6,500 up to a cap of $150,000. But that's a separate question. The question, you're not arguing that approximately 6,500 could mean 6,500 minus 1,800, are you? Well, no, Your Honor. We're saying that it's not a guarantee. It's not a promise. Under the law and the cases we cite in our brief, to say approximately is not a promise of 6,500 cylinders. Now, the court, the biggest mistake we think the court made, was to modify this written contract by a supposedly verbal telephone conversation. This contract is a mixed contract of goods and services. Indiana uses a predominant thrust test to determine if the UCC applies. Indiana's version of the UCC, like most versions of the UCC, say that sale of goods over $500 must be in writing. And case law says any modification must be in writing. A clear policy, public policy, the state of Indiana. Why? To prevent lawsuits like this. He said, they said. This verbal modification does not stand under the UCC and the predominant thrust test. Counsel, I have some difficulty seeing why this matters. The district court made two rulings. District court said, first, I'm finding there was this modification. And the judge then said, second, even if there were no modification, nothing would happen. Nothing would matter because since the count came up under 5,300, American Welding doesn't owe anything anyway. Your brief addresses the first of those alternative holdings and not the second. But it seems to me you have to address both. Well, Your Honor, on the second matter, which is the remedy. Again, we did not promise them 6,500 cylinders. There is no deficiency. But unless more than 5,300 cylinders were delivered, American gets to keep the $150,000 holdback. That's the basis of the district court's second ruling. Your assumption is that if the audit is delayed, then the holdback has to be paid in full. Nothing in the contract says that. The district court said, per contra, that the holdback has to be paid only if more than 5,300 cylinders were delivered. And they weren't. As I say, it seems to me if you lose on two grounds, you have to address both grounds on appeal if you hope to prevail. And if I may, Your Honor, again, our position is we complied with the contract because we gave them all of our cylinders. Our position is there are more than 6,000 cylinders out there. They just didn't count them. Well, the district court made a contrary finding of fact. So you're now unless it seems to me this whole line of argument about whether there was an oral modification is irrelevant unless the district court's finding about the number of cylinders is clearly erroneous. Is that a fair statement? Your Honor, I would disagree in this respect. Without the modification, they were supposed to do the count by April 15, and they did not do it. Yes, they were. But there's nothing in the contract which says that if they don't finish the count by April 15, they have to pay the whole 150,000. Yes, Your Honor. What the contract says is that if more than 5,300 cylinders are delivered, they have to pay some portion of it. Right? You began by saying, well, the contract doesn't say we promised 6,500 cylinders, and that's true. But the contract also doesn't say if the audit is delayed, the whole back has to be handed over. Your Honor, I beg to differ in that respect. Would you point me to the language that says if the audit is delayed, the whole back has to be paid? I will on rebuttal, Your Honor, and I apologize. But it is actually the district court brought that issue up at the district trial level, and we pointed out in the contract. And then he read it. If you read his open comments in the transcript, he says, oh, I see it. I see it now where it gets paid back to the seller. But he didn't make that finding. No. He may have said, I see what provision you've identified. But he didn't say, oh, and you're right about how to construe that provision. No. No, Your Honor. No, he did not say I'm right. No. Now, the modification, again, the contract itself says no verbal modifications. There's some citations in the case law saying that you can have verbal modification. I suggest a close look at those cases, because one, obviously, was modification before the contract. They said, so it didn't modify it. The Dalton construction case was a pool that got moved, and the court said, well, you're sitting on your back patio. You can tell the pool got moved. So you obviously agreed to the pool being moved. So those, I would say, in Indiana, you have to have, I think, more than just the telephone conversation that's alleged here. And I think that's very important, because the evidence is I call my client. My client says, I don't recall the call. And Ron Atkins, the president of the defendant, says, oh, I said we need an extension. And my client says, oh, yeah, give me an extension. My client says, no, I didn't say that. That's not what your client said. He said it's possible. Yeah, which is very different. But he also said, and he testified. Well, hold on. Hold on. Saying, no, I didn't say it is very different than testifying before the court that it's possible. I orally extended the deadline. Those are two very different things. Well, Your Honor, he also consistently said, but I told Ron, put it in writing, because that's what the contract provides. And when I asked Mr. Atkins that question, did my client, Buck, say to you it had to be in writing, his answer was, yeah, that's possible. Exact same level of testimony. So, Your Honor, the modification, obviously, our point is it was not modified. Now, here's probably the more important point. You need separate consideration for a modification. There is no separate consideration for this modification. There's no advantage to my client to allow them to continue to do what they were supposed to do by a certain period of time because it had no benefit to him. Why wouldn't they be benefited by the fact that the longer they had, the more cylinders they could find, the more money your client gets? Well, Your Honor, that's what they were supposed to do in the first place. In other words, they're saying they got an extension to do something they were already supposed to do. So if they don't count by April 15th, my client gets the money back. If they wait longer and then they claim, oh, it's to Buck's benefit to wait longer, keep in mind Exhibit 5, 10 days before the deadline, has the exact number that they gave May 28th late. So there was no benefit to Buck to wait. And Buck knew that. Buck testified, there's no benefit to me to wait. And I wanted it in writing because that's what the contract said. Now, the other, well, I see I have about two minutes left, Your Honor. So I'll reserve that two minutes. Thank you. Certainly, counsel. Mr. Brooker. May it please the Court. The district court's ruling in this case was simple and straightforward. AWG is only required to pay ARC for cylinders that were actually delivered, that AWG actually received from ARC. This case is an attempt to get a windfall, an attempt to be paid for cylinders that were never delivered. The underlying issue, as this court has already identified in this case, is the count. The only evidence in the record of the count is the evidence that was provided by AWG. There was a count. Do you think that the conduct of the parties in this case alone provide enough evidence to establish that there was a modification of the contract? I don't believe there was a modification of the contract other than the deadline extension that the court found was given as a result of the conduct of the parties. So, yes, there was the one modification of the deadline. Otherwise, the contract itself was as written. And here, the proof of the count, again, the count being the primary consideration here, was provided by AWG. There was a line-by-line, customer account-by-customer account count of all 1,233 customer accounts that were actually transferred from ARC to AWG. The appellants, ARC and Mr. McCormick, provided absolutely no proof of the count. All they do is speculate that the count that AWG provided was wrong. In fact, Judge Young, the district court, at the end of the trial, specifically examined Mr. McCormick on this very point. And Mr. McCormick specifically admitted during that examination by the court that he had no evidence that the count that was provided by AWG was wrong. He just believed in his heart it was wrong, and he speculated. All he had was speculation that the count was wrong. Speculation is not evidence upon which a judgment can be rendered. Now, the first argument in this case that the plaintiffs made was that there was an audit, but that it was late. That it was 38 days late, and as a result, the appellant should be paid the $150,000 cylinder deferred payment. Obviously, they did not provide the 5,301 cylinders necessary to get into the cylinder deferred payment. Now, this issue, though, of whether it was late or not shifted at trial. And the appellants essentially abandoned their lateness argument and tried to replace it with an argument that the count was never finished. Well, the count was finished. There was a specific count for each and every one of the 1,233 customer accounts that were transferred. The suggestion is, based upon a draft spreadsheet where there were other accounts listed, not every account that was ever owned by ARC was actually transferred to AWG. It had to be a productive account. AWG would have loved for there to be 700 or 800 more productive accounts. There simply were not. And wasn't, in the contract, wasn't the discretion left to AWG to determine which accounts it would take? That's exactly right, yes. In the counts that were taken, in a nutshell, were productive accounts. Accounts upon which rent were being paid. Because the way that money is made in this industry is that cylinders are rented and then they're refilled. So the argument that it is late fails for the two reasons this court has already recognized and the district court recognized. It fails as a matter of fact because the deadline was extended. It fails as a matter of law because it doesn't matter whether the audit was finished late. Because the purpose of that deadline was to ensure a timely payment of any portion of the cylinder deferred payment that was owed to ARC and Mr. McCormick. But so the underlying question is, was any of that cylinder deferred payment actually owed? And that required and was based on the count. There had to be 5,301 cylinders actually delivered for there to be any duty to make that payment or to make a timely payment. Because the shortage was so great and was less than 5,000 cylinders delivered, it didn't matter whether AWG met that deadline because you can't be late with a payment of zero. The other argument that we heard was that Mr. McCormick and ARC fulfilled the contract by delivering all of the cylinders that ARC owned. I respectfully disagree with that assertion. The duty that the appellants had was to deliver approximately 6,500 cylinders. The appellants had the best knowledge and they admitted that of how many cylinders they owned before this deal. For business reasons, the count was not done prior to the closing. The actual count was done after the closing. But the representation of the appellants was that they owned approximately 6,500. They had to deliver somewhere in the neighborhood of 6,500. Mr. McCormick admitted that the price would have been different had the representation that he made in the contract been that ARC owned approximately 1,000 or 2,000 cylinders. But that wasn't the representation. The representation was approximately 6,500 cylinders. And the approximately modifier does not provide a license to provide anywhere from zero to infinity. You have to get within the range of what approximately 6,500 is. Just because you modify 6,500 by approximately doesn't mean you can deliver 10 cylinders and fulfill the contract. But if you were to take the logic of their argument, that's exactly what they are arguing. Along those lines, another argument was advanced in the briefs and at trial that the $150,000 cylinder deferred payment was actually not a cylinder deferred payment, as its name states, but instead was intended to be a cap on damages. Well, I don't believe that argument even passes the smell test because I don't believe that contract can be interpreted in any way, shape, or form as holding the AWG intended to pay for 5,300 cylinders regardless of what it received. The contract can be interpreted, the only way I believe it can be interpreted, and the way the district court interpreted it, was that this contract was for the delivery of approximately 6,500 cylinders. A shortfall or an overage would be charged at $125 a cylinder, either way. There was no cap on damages if the delivery was far, if the shortfall was far beyond the 5,300. Nobody contemplated that the shortfall would be that large, but it was, and it had to be dealt with, and it was dealt with in exactly the way the contract provided. Your Honors, the audit was done. The audit was finished. The only proof of the audit in the record, or the only proof of the count, the only count ever made, ever given, ever provided, was the count that was provided by AWG. The $125 cylinder per cylinder number is exactly what the contract provided. And there was no error in the district court's decision here. Finally, I'll take a minute to address the attorney's fee claim argument that was made by the appellants. I wish I was wrong on this. I wish the prevailing party was entitled to their attorney's fees in this case. But the fact is, the prevailing party is not. Under the contract, there is Section 10, which concerns indemnification, which concerns third-party claims. And then there is Section 12-2, which governs first-party claims. And unfortunately, in my estimation, Section 12-2 holds that between these parties, ARC and AWG, the parties are responsible for their own attorney's fees in disputes over the performance of the contract, which this case is. For all the foregoing reasons, I ask this court affirm the judgment of the district court in all respects. Thank you, Mr. Brooker. Anything further, Mr. Kahn? Yes, Your Honor. First, Your Honor, getting back to Your Honor's earlier question, Section 2.1e of the Asset Purchase Agreement says the balance of the cylinder deferred payment, if any, shall be paid to the seller plus interest of 4% from the effective date to the date of the settlement. And that is after the remedy set out in the deferred cylinder payment. Your Honor, Mr. Brooker referred to my client's testimony and the judge's questions to him. My client was not speculating. My client had records of invoices of over 6,000 cylinders that he gave to the purchaser before they even closed the deal. It was not speculation. The actual, and I would also then emphasize this point from the brief, on the damages, cylinders were proven to be all sizes, shapes, usage, and age. On the damages, they did not present any evidence as to what cylinders were not there, nor did they present any evidence as to the value of the cylinders. Why wouldn't the contract be the best evidence? It says $125. That's what was negotiated arm's length? That's the remedy under the contract deferred payment, and that's our argument that that's capped at $150,000. But why wouldn't the $125 that's in the contract per cylinder be the best evidence of what the value of each cylinder is? Because it is not the evidence of damages on a breach of a contract, which is what they're alleging. Whether it's for damages or not, it's applying a value that was agreed to that would be applied to each cylinder. Why wouldn't that be the best evidence as the district court found? That's an agreed remedy, Your Honor, an average as to the deferred cylinder payment. It is not proof of damages for what they're claiming beyond the deferred payment, and they presented no evidence as to those damages. And I thank you very much. Thank you very much. The case is taken under advisement. The court will take a brief recess before calling the third case.